HENNEGAN, Respondent, v. WILEY, Appellant.

(178 N. W. 294.)

(File No. 4673.   Opinion filed June 22, 1920.)

1. **Evidence—Agency Sale—Ability of Purchaser to Pay, Evidence Of, Competency—Another's Similar Testimony, Curing Error.**

    Where, in a suit to recover a broker's commission on sale of realty incompetent testimony was admitted touching ability of a party claimed to have been procured as a purchaser to make the necessary cash payment, such error was cured by proof by another witness of such ability; and the error was without prejudice.

2. **New Trial—"Newly Discovered Evidence," Insufficient Excuse for Failure to Produce Witness, Effect.**

    Where the alleged newly discovered evidence is testimony of a witness who, if introduced at trial, would have procured a contrary verdict, the fact that no sufficient excuse is shown for party's failure to have witness or her deposition at the trial, is good ground for refusing new trial.

3. **Evidence—Motion for Verdict, Evidence Supporting Under Instructions—Erroneous Refusal to Direct, Whether Cured by Failure to Except.**

    Where, on a motion to direct verdict, there was ample evidence, under the instructions, to support the verdict, held, that if the motion was erroneously denied it could not be cured either by party's failure to except to instructions or by the verdict.

4. **Brokers—Suit for Commission—Procuring Purchaser, Ready, Able and Willing, Or Procuring Purchaser's Binding Contract, Necessity of Proof Of—Withdrawal After Purchaser Found, Effect Re Closing Contract.**

Where, in a suit to recover a broker's commission on land sale, evidence tended to show that land owner, after plaintiff had procured a purchaser, notified plaintiff that she had taken the land off the market, and would not deliver same, held, that it was incumbent on plaintiff to prove that, had it not been for such withdrawal he could and would have either produced purchaser, ready, able and willing to purchase on seller's terms, or could and would have procured a purchaser's signature to a contract binding him to purchase on proposed terms. **Held,** further, that such withdrawal from the market excused plaintiff from either having such contract executed or from bringing his party to the owner.

5. **Same—Buyer's Intention to Close Deal, Jury's Right to Infer Intention Continued for a Day.**

Held, further, in the light of testimony going to prove that prior to such withdrawal, plaintiff and his proposed purchaser were intending to close the deal, that if jury believed such testimony, it had a right to infer that such design would have been persisted in and acted upon on the following day after notice of such withdrawal; it being a legitimate inference that the design continued to exist at least for a day.

6. **Broker's—Suit for Commission—Owner's Withdrawal from Sale Pending Agent's Consummation of Sale, Non-motive to Escape Paying Commission—Rule—Rebutting Inference of Bad Faith As Affecting Liability.**

Where a land owner, on the very eve of successful culmination of an agent's sale thereof, withdraws the land from sale, she having testified her motive was not merely to escape payment of a commission; held, that the time of the revocation is a strong indication of bad faith on the part of the employer, and unless such inference is rebutted by other evidence employer will be liable for sale commission.

Appeal from Circuit Court, Moody Count. Hon. Louis L. Fleeger, Judge.

Action by M. J. Hennegan, against Ida M. Wiley, to recover a broker's commission on land sale. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*George J. Danforth,* for Appellant.
*Lewis Benson,* for Respondent.

(4) To point four of the opinion, Appellant cited: Gunn v. Bank of California (Cal.), 33 Pacific, 1105; Edwards v. Laird, (Cal.), 134 Pacific, 365.

Respondent cited: Getzelson v. Donnelly, 50 Mich. 164; 98 N.Y.S. 213; Morrison v. Tuska, 113 NYS. 611.

(6)  To point six, Respondent cited: 4 Ruling Case Law, pages 253, 254.

WHITING, J.  Action to recover broker's commissions which plaintiff claims to have earned through finding a purchaser, ready, able, and willing to purchase defendant's farm in accordance with terms fixed by defendant.  Verdict and judgment were for plaintiff, and defendant has appealed from the judgment and from an order denying a new trial.  Such appeal presents three questions.

[1]  Certain testimony, touching the ability of the party claimed to have been procured as a purchaser to make the necessary cash payment, was received over objection.  This particular testimony was clearly incompetent; but, inasmuch as such party's ability to make the payment was established by testimony of another witness—which testimony was free from objection—the error was without prejudice.

[2]  One ground of motion for new trial was "newly discovered evidence."  This evidence is the testimony of a witness, and, if it had been introduced at the trial, the verdict would probably have been for appellant; but no sufficient excuse is shown for appellant's failure to have the witness or her deposition at the trial.

[3-5]  After all the evidence was in, appellant moved for a directed verdict.  This motion was overruled.  Upon this ruling the judgment below must stand or fall.  Respondent urges that, under the instructions of the court, there was ample evidence to support the verdict.  If this motion was erroneously overruled, it could not be cured either by appellant's failure to except to instructions or by the verdict.  There was evidence—some of it absolutely incompetent, but received without objection—tending to prove that respondent found a party ready, able, and willing to purchase appellant's land in accordance with the terms proposed. Appellant moved for directed verdict on the ground that it appeared undisputed that respondent never, at any time, produced or brought to her such party; that respondent never secured the signature of such party to any contract binding him to purch-

ase said land; and that such party never offered, to appellant, to consummate a sale.

[4, 5] Respondent concedes that, ordinarily, it is incumbent upon a broker, before he can recover commissions, to not only find a purchaser, ready, able, and willing to purchase on the seller's terms, but to produce his proposed purchaser to the seller or secure his signature to a binding contract, binding him to purchase the land in accordance with the proposed terms; but respondent contends that he was excused, through appellant's act from either producing his party or procuring such a contract. It was incumbent upon respondent to prove that, if it had not been for such act on the part of appellant, he could and would have done one or the other of the omitted acts. It appears that, on Friday evening, respondent phoned appellant, who lived in a neighboring town, that he had sold the land, and for her to come the next morning and "draw a contract." She drove over and interviewed respondent that same evening. Respondent testified that appellant asked where his purchaser was, and he advised her that he had gone to bed; that appellant said she had just come over for a pleasure trip; that he said, "Come over in the morning and we will fix up the deal;" that she said, "It looks kind of like rain, and if I can't come I'll phone you;" and that the next morning appellant phoned that she had taken the land off the market, and would not deliver same. This certainly excused respondent from either going on and having a contract executed or from bringing his party to appellant, though, in order for the jury to find for plaintiff, it must be of the opinion that, if it had not been for appellant's refusal to close a sale, respondent could and would either have procured a contract of purchase or else brought his party to appellant. There was testimony going to prove that, on Friday, both respondent and his proposed purchaser were intending to close this deal. The jury, if it believed such testimony, had a right to infer that such design would have been persisted in and acted upon Saturday, nothing to the contrary appearing, because it is a legitimate inference that the design continued to exist at least for a day. 10 R. C. L. 872; Barker v. Wesern Union Tel. Co., 134 Wis. 147, 114 N. W. 439, 14 L. R. A. (N. S.) 533, 126 Am. St. Rep. 1017; Chamberlayne, Modern Law of Ev. § 1030.

[6]    Appellant contends that she had a right to cancel the brokerage contract at any time if her motive was not to escape liability for the broker's commissions; and she testified that her motive was not merely to escape payment of such commissions. But, as stated in 4 R. C. L. 254:

"If in such a case the agency is terminated on the very eve of its successful culmination, the time of the revocation is a strong indication of bad faith on the part of the employer, and unless such inference is rebutted by other evidence the employer will be held liable."

The trial court did not err in refusing to direct a verdict for defendant.

The judgment and order appealed from are affirmed.